# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| LAUREN J. COON,<br><br>    **Plaintiff,**<br><br>v.<br><br>CRAWFORD & COMPANY,<br><br>    **Defendant** | Civil Action No. 3:23-cv-02732-S |

**DEFENDANT CRAWFORD & COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, TO DISMISS, AND FOR SANCTIONS**

Pursuant to Federal Rule of Procedure 12(b)(3), Local Rule 7.1(d), and 28 U.S.C. §1927, Defendant Crawford & Company ("Crawford") submits this Memorandum of Law in Support of its Motion to Compel Arbitration, to Dismiss, and for Sanctions.

### I.  FACTUAL BACKGROUND

Plaintiff Lauren J. Coon ("Coon") worked for Crawford from July 22, 2019 until her voluntary resignation on January 23, 2023. (Declaration of Afiong Ekong ("AE Decl."), ¶ 7, attached as **Exhibit A**).  As part of Crawford's onboarding process, all employees, including Coon, must review and agree to Crawford's Employee Arbitration Agreement (the "Agreement") as a condition to being hired to work for Crawford. (*Id.* at ¶ 13 and its Exhibit C).

When Coon was hired, Crawford utilized a software program known as iCIMS to recruit and onboard employees.  (*Id.* at ¶ 8).  To gain access to iCIMS, an employee had to create his/her own personal username and personal password during the pre-hire process.  (*Id.* at ¶ 9).  Upon hire, the employee would use their personal username and personal password to complete the new hire and onboarding process. (*Id.*).  When Coon applied for a job at Crawford, she created the personal username "ljcoon" and set her own password, which was unknown to Crawford.  (*Id.* at

1

¶ 11 and its Exhibit B). This was the same personal username and password she used to access iCIMS as a new hire. (*Id*. at ¶ 12).

Once hired, Crawford assigned Coon a unique employee identification number, #54450, to begin her onboarding process. (*Id*. at ¶ 11). The Agreement was included in Crawford's onboarding documents. (*Id.* at ¶ 9). On July 24, 2019, Coon accessed the iCIMS platform and reviewed Crawford's Policy & Acknowledgement Summary (the "Summary"). (*Id.* at ¶ 12 and its Exhibit C). This Summary included a list of required Crawford onboarding documents, one of which was the Agreement. (*Id.*) The Summary instructed Coon to electronically check a box once she received, read, agreed, and accepted each document contained in the onboarding packet. (*Id.*) Also included in Coon's Summary was an acknowledgement that her acceptance of each document listed therein was required as a condition of her employment. (*Id.*)

Accordingly, Coon received, read, agreed, and accepted the Agreement on July 24, 2019. (*Id.* and its Exhibit A). She also checked the Agreement as "complete" on the Summary list, acknowledging that her acceptance of the same was a condition of her Crawford employment. (*Id.*)

The Agreement provides that it is "governed by the Federal Arbitration Act to the extent allowed by law." (Lauren Coon's Signed Employee Arbitration Agreement, attached as **Exhibit B**). It further provides that:

> [t]he Parties agree that, **to the fullest extent permitted by law, any and all claims or controversies between them . . . relating in any manner to the employment or the termination of employment of Employee,** including claims or controversies that arose, existed, or accrued prior to the signing of this Agreement . . . that are currently pending as of the signing of this Agreement, and that may arise or accrue after the signing of this Agreement, including claims that may arise or accrue during future assignments, engagements, or employment with the Company, and including but not limited to the interpretation, applicability, or enforceability of this Agreement, shall be resolved by final and binding arbitration.

*Id.*

Contrary to her promise to honor the Agreement, however, Coon filed this suit on December 11, 2023, alleging that her Crawford employment and the termination thereof was pockmarked by gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation in violation of Title VII, discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"), retaliation in violation of TCHRA, and a slew of state law claims.[1] (ECF 1).

On December 22, 2023, Crawford's outside counsel consulted with Coon's attorneys via email to avoid filing this Motion. (December 22, 2023 Letter, attached as **Exhibit C**). That letter included a copy of the signed Agreement, and it urged Plaintiff and her counsel to consent to its terms. Unfortunately, Coon, through her attorneys, have steadily refused to do so, asserting that Coon does "not remember" signing the Agreement. (January 2024 Email Chain, attached as **Exhibit D**). Defense counsel wrote several more times, asking if Coon was claiming that her signature was fraudulent or if there was any other basis for her refusal to honor the Agreement. (*Id.*) Plaintiff's counsel ignored these questions and has refused to answer them this day. (*Id.*) Accordingly, Defendant now seeks an order compelling arbitration, dismissing this case, and seeking sanctions for having to go through this exercise for no good reason. (*Id.*)

## II.    CITATION TO AUTHORITY AND ARGUMENT

### A.    Legal Standard

The Federal Arbitration Act ("FAA"), enacted in 1925, manifests a long-standing "strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*,

---

[1] Coon's state law claims consist of breach of contract, quantum meruit, promissory estoppel, and common-law fraud/fraudulent inducement.

470 U.S. 213, 217, 221 (1985). The FAA places the enforceability of such agreements on the same footing as other contracts and requires courts to "rigorously enforce" them. *Id.* at 217. Specifically, Section 2 of the FAA provides that all agreements to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Hence, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. Moreover, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Where a party moves to compel arbitration pursuant to a written agreement, the court may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3). When analyzing such a motion, "the burden of sustaining venue lies with the plaintiff." *Broadway Nat'l Bank v. Piano Encryption Techs., LLC,* 173 F. Supp. 3d 469, 473 (W.D. Tex. 2016). At that time, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments." *Id.* (quoting *Ambraco, Inc. v. Bossclip B.V.,* 570 F.3d 233, 238 (5th Cir. 2009)).

If a court does not dismiss a case after compelling arbitration, it must, at a minimum, stay the case under Section 3 of the FAA. *See* 9 U.S.C. § 3 (authorizing courts to "stay the trial of [an] action until such arbitration has been had in accordance with the terms of the agreement"); *Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674, 678 (5th Cir. 1999) (where court does not grant dismissal, "the express terms of [FAA] § 3 provide that a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration") (internal quotations omitted).

Again, though, Fifth Circuit precedent allows for a case's dismissal "when all of the issues raised in the district court must be submitted to arbitration." *Adam Techs. Int'l S.A. De C.V. v. Sutherland Global Servs.*, 729 F.3d 443, 447 (5th Cir. 2013) (quoting *Alford* v. *Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 959 (5th Cir. 2007) ("the Fifth Circuit encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose").

Finally, Section 1927 of Title 28 to the United States Code provides that, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The threshold for awarding such sanctions requires a showing of improper motive on the part of an attorney, independent of a showing that the claims pursued were baseless. *See FDIC v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994). Specifically, the court must find that the sanctioned attorney multiplied the proceedings both "unreasonably" and "vexatiously." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

  **B.** **<u>The Agreement is Governed by the FAA.</u>**

The FAA governs the analysis and enforcement of arbitration agreements where the parties invoke that statute. *See Wee Tots Pediatrics, P.A. v. Morohunfola,* 268 S.W.3d 784, 789 (Tex. App.—Fort Worth 2008, no pet.) ("The FAA governs a contract evidencing a transaction involving interstate commerce if the contract contains a written arbitration provision."). *See also Orleans*

*Glass Co. v. Roy Anderson Corp.,* 632 Fed. Appx. 166, 169 (5th Cir. 2015). Here, Coon's Agreement expressly references the FAA as its governing source of authority.

The FAA, in turn, requires a strong presumption in favor of arbitration where a valid arbitration agreement is provided; and any doubts regarding the existence or scope of an agreement **must** be resolved in favor of arbitration. *See, e.g.*, *Byrd,* 470 U.S. at 217; *Moses M. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23 (1983). Indeed, the FAA requires district courts to "compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 n.20 (5th Cir. 1985).

### C. Coon's Claims are Arbitrable.

The Fifth Circuit Court of Appeals applies an intuitive two-step analysis when determining whether parties are compelled to arbitrate a dispute, asking whether: (1) there is a valid agreement to arbitrate, and (2) if the plaintiff's claims are covered by that agreement. *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). Here, the facts conclusively establish that Coon is subject to a valid arbitration agreement with Crawford and that her claims against Crawford fall within its scope.

#### 1. *A Valid Agreement to Arbitrate Exists Between Coon and Crawford.*

Whether a valid arbitration agreement exists is determined under "ordinary principles of state contract law." *In re Kellogg Brown & Boot,* 166 S.W.3d 732, 738 (Tex. 2005). In Texas, to prove the existence of a binding contract, a plaintiff must establish that: (1) an offer was made; (2) the other party accepted the offer in strict compliance with its terms; (3) the parties had a meeting of the minds on the essential terms of the contract; (4) each party consented to those terms; and (5)

6

the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018). Each of these factors is met here.

Crawford conditioned Coon's employment on her agreement to submit to arbitration all claims relating to or arising out of her employment. Moreover, this requirement was mutual as to Crawford as well. (**Ex. B.** at 1). Such an exchange is routinely found to constitute adequate consideration in the Fifth Circuit and under Texas law. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 477-78 (5th Cir. 2003) (holding an offer of at-will employment by employer constituted adequate consideration to support an employee's agreement to arbitrate any disputes arising out of employment); *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (holding a mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement).

Second, Coon's and Crawford's signatures on the Agreement, the commencement of Coon's employment with Crawford, and her continued Crawford employment for over three and one-half years each demonstrates her (and Crawford's) acceptance of this condition. (AE Decl. at ¶ 13; **Ex. B** at 3).

Coon seeks to wriggle free of her arbitration commitment by arguing only that she "does not remember" signing the Agreement. (**Ex. D**). While perhaps true, this assertion is irrelevant to the Court's consideration. The undisputed evidence shows that Coon – and only Coon – received and agreed to the Agreement's terms. (AE Decl. at ¶ 13). **Only Coon** had access her iCIMS profile to sign the Agreement. Coon's username was personalized, and the password she needed to access and sign the Agreement was created by and private to her. (*Id*. at ¶ 11).

Faced with similar facts, federal courts routinely reject arguments such as that Coon presents. *See, e.g., Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, *5 (5th Cir. May 4, 2022) (affirming defendant's motion to dismiss and to compel arbitration; plaintiff's

claim that he did not recall receiving or signing the arbitration agreement was rejected where defendant, through a human resources specialist, put forth evidence demonstrating that plaintiff received and accepted the arbitration agreement via its electronic system); *Garrett v. Hooters of Am., LLC*, No. 4:21-CV-00154, 2022 WL 347619 (S.D. Tex. Jan. 5, 2022), *report and recommendation adopted*, No. 4:21-CV-00154, 2022 WL 345648 (S.D. Tex. Feb. 3, 2022) (granting defendant's motion to compel arbitration and rejecting plaintiff's claim that he did not recall receiving or signing the arbitration agreement; defendant, through its Director of Human Resources, put forth evidence demonstrating that plaintiff received and accepted the arbitration agreement through its electronic system used during the employment application process); *accord Lewis v. Circle K Stores, Inc*, No. CV H-23-1446, 2023 WL 6448853, *1-2 (S.D. Tex. Oct. 3, 2023).

This Court should similarly decline to credit Coon's assertion that she is not compelled to arbitrate her claims simply because she "does not recall" signing the Agreement.

### 2. *Coon's Claims Fall Within the Scope of the Agreement.*

Each and all of Coon's claims against Crawford expressly fall within the scope of the Agreement. Again, the Agreement avers that:

> [t]he Parties agree that, to the fullest extent permitted by law, **any and all claims or controversies between them** . . . **relating in any manner to the employment or the termination of employment of Employee, including claims or controversies that arose, existed, or accrued prior to the signing of this Agreement** . . . that are currently pending as of the signing of this Agreement, and that may arise or accrue after the signing of this Agreement, including claims that may arise or accrue during future assignments, engagements, or employment with the Company, and including but not limited to the interpretation, applicability, or enforceability of this Agreement, shall be resolved by final and binding arbitration.

(**Ex. B**) (emphasis added).

### D. Coon's Attorneys' Refusal to Honor the Agreement Notwithstanding Binding Authority Undermining Their Argument Is Unreasonable and Vexatiously Multiplied These Proceedings.

Counsel for Crawford immediately engaged Coon's counsel to share the contents of the Agreement and asked that it be honored. Coon's counsel responded by asserting only that Coon had no recollection of signing the Agreement. (**Ex. D**). Crawford's counsel, in turn, requested clarification, asking if Coon was denying that her electronic signature appeared on the Agreement, if she believed if the signature that appeared on the Agreement was fraudulent, and if she had any evidence to back up such a claim (if that was her stance). (*Id.*) Coon's counsel declined to respond. (*Id.*) When Crawford's attorney posed these questions once again, Coon's attorney ignored them once more. (*Id.*) When, for a third time, counsel for Crawford asked if Coon was refusing to arbitrate, and if so, whether a factual or legal basis existed for taking that position, Coon's counsel simply asserted that Coon did not sign the Agreement. (*Id.*) At every turn, Coon's attorney refused to provide any explanation or justification for his position. And when pressed, he provided a terse response that courts in this Circuit have uniformly rejected as legally insufficient. Crawford, in turn, was forced to spend time and money needlessly briefing this dispute.

Equally disconcerting, Coon's counsel refused at every turn to engage in a good-faith discussion to prevent this dispute from coming before this Court. *Cf. Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291–92 (5th Cir. 2002) (upholding sanctions award where counsel's explanations for witness's absence at hearing were not credible and caused hearing to be rescheduled). As in *Lyn-Lea*, Coon's counsel shirked his responsibility to seek concrete answers to Crawford's counsel's specific questions or to undertake any effort whatsoever to provide information or evidence backing up Coon's bankrupt assertion that she did not recall signing the Agreement. Under the circumstances, Coon and her counsel of record, Cantey Hanger, LLP,

9

should be ordered to pay sanctions in the amount of all reasonable attorneys' fees Crawford incurred in filing and arguing this Motion.

### III.   CONCLUSION

Respectfully, this Court lacks subject matter jurisdiction over this dispute because a valid and binding arbitration agreement exists between Crawford and Coon which covers all of Coon's claims. Consequently, Crawford respectfully asks for this Court to order Coon's claims to arbitration and dismiss them from this Court. Further, Plaintiff's and her counsel's intransigence lacked any good-faith basis, requiring Crawford to incur needless fees to secure the relief the parties already agreed to. For that reason, they should be sanctioned and made to pay the reasonable attorney's fees Defendant incurred associated with securing the relief sought herein.

Respectfully submitted on January 24, 2024.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*/s/ Ferdose al-Taie*
Ferdose al-Taie
TX Bar No. 24106644
5956 Sherry Lane, 20th Floor
Dallas, TX 75225
Telephone: (214) 301-7210
Facsimile: (713) 650-9701
Email:  faltaie@bakerdonelson.com

*Counsel for Defendant
Crawford & Company*

## **CERTIFICATE OF CONFERENCE**

On December 23, 2023, I personally sent a letter to Robert E. Aldrich, Jr. and Daeja A. Pemberton, attorneys for Plaintiff Lauren J. Coon, regarding the Arbitration Agreement Plaintiff signed and making Plaintiff's counsel aware of the alternate process for Plaintiff's claims. Mr. Aldrich responded to my letter via email on January 2, 2024, confirming receipt of the letter and notifying me that he was unaware of the Arbitration Agreement.

On January 15, 2024, Mr. Aldrich sent me another email stating that after speaking with the Plaintiff, she had no memory of being presented with or signing the Arbitration Agreement. After two attempts (between January 15, 2024 and January 17, 2024) to clarify the bases for Plaintiff's contention that she never signed the Arbitration Agreement and asking if Plaintiff was refusing to arbitrate, Mr. Aldrich responded on January 19, 2024 stating only that Plaintiff still contends that she did not sign the Arbitration Agreement.

To date, I do not definitively know whether Plaintiff is refusing to arbitrate this dispute, though Plaintiff's counsel's cryptic responses appear to indicate as much.

Certified to the 24th day of January, 2024.

*/s/ David Gevertz*
David E. Gevertz
Georgia Bar No. 292430
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
3414 Peachtree Road, NE, Ste 1500
Atlanta, Georgia 30326-1164
Phone: 404-221-6508
Fax: 678-406-8816

## **CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that I have this day served a copy of the foregoing document by filing the same using the Court's ECF system, which will automatically send notification to the following attorneys of record:

Robert E. Aldrich, Jr., Esq.
Daeja A. Pemberton, Esq.
CANTEY HANGER, LLP
600 West 6th Street, Suite 300
Fort Worth, Texas 76102
raldrich@canteyhanger.com
dpemberton@canteyhanger.com

          */s/ Ferdose al-Taie*
          Ferdose al-Taie
          *Counsel for Defendant Crawford & Company*