# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LAUREN J. COON | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-2732-S |
| | § | |
| CRAWFORD & COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Crawford & Company's Motion to Compel Arbitration, to Dismiss, and for Sanctions ("Motion") [ECF No. 7]. The Court has reviewed the Motion, Defendant's Memorandum of Law in Support of the Motion ("Defendant's Brief") [ECF No. 8], Plaintiff Lauren J. Coon's Response to the Motion ("Response") [ECF No. 15], Plaintiff's Appendix to the Response ("Plaintiff's Appendix") [ECF No. 16], Defendant's Reply in Support of the Motion ("Reply") [ECF No. 21], and the applicable law. For the following reasons, the Court determines that the existence of a binding arbitration agreement is in issue. Accordingly, the Motion is **DENIED WITHOUT PREJUDICE** pending a trial about whether there is a binding agreement to arbitrate.[1]

## I. BACKGROUND

### *A. Plaintiff's Claims*

This case arises out of alleged misrepresentations and discrimination directed at Plaintiff related to her work for Defendant. Plaintiff began working for Defendant on July 22, 2019. Pl.'s Original Compl. ("Complaint") [ECF No. 1] ¶ 10. Prior to hiring Plaintiff, Defendant allegedly made representations to Plaintiff regarding her potential for earning bonuses. *Id.* ¶ 9. After being

[1] Defendant voluntarily withdrew the Motion's request for sanctions. Reply 7. Therefore, the only issues before the Court are the requests to compel arbitration and to dismiss the case.

hired, Plaintiff entered into an incentive compensation plan ("ICP"), which set forth the requirements for Plaintiff to earn bonuses while working for Defendant. *Id.* ¶ 11. According to Plaintiff, Defendant failed to accurately track the revenue she brought in, resulting in Plaintiff being ineligible for a bonus under the ICP. *Id.* ¶ 12. Plaintiff alleges that this miscalculation continued after she brought it to Defendant's attention, and Defendant later created a second ICP that also had miscalculated revenue. *Id.* ¶¶ 12, 15-16. Plaintiff also alleges that she experienced sex discrimination and retaliation from an officer of Defendant. *See id.* ¶¶ 17-25. The same officer allegedly favored male employees by awarding them more promotions and pay. *Id.* ¶ 32. Plaintiff alleges when she brought her complaints to Defendant, it failed to act, and Plaintiff further alleges she was constructively discharged on January 23, 2023. *Id.* ¶ 35.

Based on the foregoing events, Plaintiff brings claims for discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., retaliation under Title VII, discrimination under the Texas Commission on Human Rights Act ("TCHRA"), TEX LAB. CODE § 21.001, et seq., retaliation under the TCHRA, breach of contract, quantum meruit, promissory estoppel, and common-law fraud/fraudulent inducement. *Id.* ¶¶ 37-92. Defendant filed the Motion seeking dismissal of Plaintiff's claims because Plaintiff purportedly signed an agreement to arbitrate claims as set forth in the Complaint.

### ***B. Alleged Arbitration Agreement***

The parties agree that Plaintiff participated in an employee onboarding process that included signing documents from Defendant. *See* Resp. 1-3; Def.'s Br. 1-2. The parties disagree on what documents Plaintiff signed during onboarding.

According to Defendant, Plaintiff used a software program called iCIMS to complete her employee onboarding. Def.'s Br. 1. Based on Defendant's records, Plaintiff accessed the iCIMS

platform on July 24, 2019, and reviewed Defendant's Policy & Acknowledgement Summary. *Id.* at 2. Defendant's records show that, on that same day, Plaintiff checked a box acknowledging that she received, read, agreed, and accepted each document contained in the onboarding packet, which included Defendant's Employee Arbitration Agreement ("Arbitration Agreement"). *Id.* Defendant has produced a copy of the Arbitration Agreement with Plaintiff's typed name on the signature line, Plaintiff's typed initials, and a typed date of July 24, 2019. Decl. of Afiong Ekong, Ex. A [ECF No. 8-1] 8-10.

Plaintiff contends that she never signed the Arbitration Agreement and that her signature was forged. Resp. 3, 16. Plaintiff acknowledges that she used the iCIMS program to apply for the job for which she was ultimately hired. *Id.* at 1. However, Plaintiff claims that she did not use iCIMS for onboarding. *Id.* at 3-4. Plaintiff explains that she was emailed documents to sign between July 2 and July 24, 2019, but none of them were the Arbitration Agreement. *See id.* at 2-3. The documents Plaintiff acknowledges signing for Defendant had signatures that included information such as time stamps, email addresses, social security numbers, and IP addresses. *Id.* at 3. While Plaintiff admits visiting Defendant's office for onboarding on July 24, 2019, she claims that she neither signed any documents nor used iCIMS on that date. *Id.* at 3-4. To support this assertion, Plaintiff has provided the unsworn declaration of Phil Sisto—a former colleague who was also at Defendant's office for onboarding on July 24, 2019—which corroborates Plaintiff's claims. *Id.* at 4 (citing Pl.'s App., Ex. B). Plaintiff has also produced a signed arbitration agreement of a former employee of Defendant, Melissa Sheppard, which has a different signature format than the signature on the Arbitration Agreement that Plaintiff allegedly signed. *Id.* at 14-15.

## II. LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

Whether to enforce an arbitration agreement involves two analytical steps. "First, the court must determine whether the parties agreed to arbitrate the dispute." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (citation omitted); *see also Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) ("The first [step] is contract formation—whether the parties entered into *any arbitration agreement at all.*"). Second, "it must consider whether any federal statute or policy renders the claims nonarbitrable." *Will-Drill*, 352 F.3d at 214 (citation omitted); *see also Kubala*, 830 F.3d at 201 ("The second [step] involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement.").[2] In analyzing these steps, the court may consider "the pleadings and evidence on file." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 444 (N.D. Tex. 2019) (citing FED. R. CIV. P. 56(a)).

"[W]here a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute." *Will-Drill*, 352 F.3d at 219. The "threshold burden" for the party attacking the arbitration agreement is to put the existence of the agreement "in issue." *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363-64 (5th Cir. 2015) (citations omitted); *see also Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (noting

---

[2] The Court does not address whether the Arbitration Agreement covers Plaintiff's claims because, for the reasons explained below, whether the Arbitration Agreement is binding on Plaintiff has been put in issue.

that the question before the court when the existence of an arbitration agreement is challenged is whether the plaintiff puts the agreement "in issue"); *Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 209-10 (5th Cir. 2019) (stating that the party challenging agreement formation bears the "initial" burden so as to "limit meritless claims of invalidity" (citation omitted)).[3] To put the existence of the agreement in issue, the party must unequivocally deny that she agreed to arbitrate and must produce "some evidence" supporting her position. *Chester*, 607 F. App'x at 363-64. While the Fifth Circuit "has not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate, . . . the party must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true and he must produce at least some evidence to substantiate his factual allegations." *Gallagher*, 860 F. App'x at 357 (cleaned up). If the existence of the arbitration agreement is put in issue, the court "must hold a trial on the existence of an arbitration agreement." *Chester*, 607 F. App'x at 363 (citing 9 U.S.C. § 4).

## III. ANALYSIS

For a court to dismiss an action and compel arbitration, there must first be a valid agreement to arbitrate. Defendant argues that the Court has must compel arbitration because Plaintiff signed the Arbitration Agreement. *See* Def.'s Br. 6-8. Plaintiff counters that she never signed the Arbitration Agreement. *See* Resp. 10-16. Because Plaintiff denies that she signed the Arbitration Agreement, the threshold question for the Court is whether Plaintiff has put the existence of a binding arbitration agreement in issue. The Court concludes that she has.

[3] Plaintiff contends that Defendant must first prove the existence of the Arbitration Agreement before she is required to put the agreement in issue. Resp. 8. The Court disagrees. Based on an examination of Fifth Circuit precedent and 9 U.S.C. § 4, much of which the Court cites here, the Court concludes that the plaintiff bears the initial burden of putting an allegedly binding arbitration agreement in issue. If the plaintiff meets her threshold burden, then the defendant must prove the existence of a binding arbitration agreement under state law by a preponderance of evidence at trial. *See Chester*, 607 F. App'x at 363-64.

First, Plaintiff unequivocally denies agreeing to arbitrate. In her unsworn[4] declaration, Plaintiff states that she "did not sign an arbitration provision or an agreement to arbitrate in relation to [her] employment with [Defendant]" and "did not sign the [Arbitration Agreement]." Pl.'s App., Ex. A ¶ 4. Plaintiff also declares that she never used Defendant's iCIMS program to sign any documents on July 24, 2019, which is the date Defendant claims she signed multiple documents, including the Arbitration Agreement. *Id.* ¶ 7; Def.'s Br. 2. Plaintiff's unequivocal denial that she signed the Arbitration Agreement under threat of perjury is sufficient to put the making of the Arbitration Agreement in issue. *See Chester*, 607 F. App'x at 364 (finding the making of an agreement in issue based upon an affidavit of the plaintiff in which he unequivocally denied signing the agreement); *Acosta v. Odle Mgmt. Grp., LLC*, No. EP-19-CV-265-PRM, 2020 WL 4060782, at *4 (W.D. Tex. July 20, 2020) (same).

Second, Plaintiff corroborates her declaration with evidence. In his unsworn declaration, Sisto states that he attended Defendant's onboarding training alongside Plaintiff on July 24, 2019, and that he was with Plaintiff "at all times . . . except during breaks when we each went to our respective hotel rooms." Pl.'s App., Ex. B ¶ 3. Sisto corroborates Plaintiff's statements that she did not access iCIMS or sign any documents, including an arbitration agreement, on that day. *Id.* ¶¶ 4-5. Sisto's declaration supports a finding that the making of the Arbitration Agreement is in issue. *See Phillips v. Weatherford US, LP*, No. 1:20-CV-1104-RP, 2021 WL 1647761, at *3 (W.D. Tex. Apr. 27, 2021) (finding an agreement in issue in part due to declaration from a third party that corroborated the plaintiff's declaration); *Denman Springs, LLC v. L.G. Burke, Inc.*, No. 9:19-

---

[4] "[A]n 'unsworn declaration . . . in writing of [a] person which is subscribed by him, as true under penalty of perjury and dated' may substitute for a sworn declaration." *Stewart v. Guzman*, 555 F. App'x 425, 431-32 (5th Cir. 2014) (second alteration in original) (quoting 28 U.S.C. § 1746). Each of the unsworn declarations submitted by Plaintiff are signed, declared as true under penalty of perjury, and dated. *See* Pl.'s App., Ex. A at 5; *id.*, Ex. B at 136; *id.*, Ex. C at 139; *id.*, Ex. D at 153; *id.*, Ex. E at 167.

CV-224-MJT, 2020 WL 10317734, at *2 (E.D. Tex. Dec. 22, 2020) (same). Plaintiff also presents signatures from other documents she signed as well as Sheppard's arbitration agreement, all of which have distinct signature formats compared to Plaintiff's alleged signature on the Arbitration Agreement. *See* Resp. 12-15. Similar to corroborating declarations, varying signature formats are evidence that puts the making of an arbitration agreement in issue. *See Prevost v. Burns Int'l Sec. Servs. Corp.*, 126 F. Supp. 2d 439, 441-42 (S.D. Tex. 2000) (finding an agreement in issue based upon inconsistent signatures).

The gravamen of Plaintiff's evidence is that she never signed the Arbitration Agreement, which she also unequivocally denies doing. If Plaintiff did not sign the Arbitration Agreement, then she "would be relieved of [her] contractual obligation to arbitrate." *Gallagher*, 860 F. App'x at 357 (citation omitted); *see also Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365 (S.D. Tex. 2006) ("The courts are properly cautious in binding individuals who have not signed contracts containing arbitration clauses to arbitrate under those contracts [since a]rbitration is a matter of contract." (citation omitted)), *aff'd sub nom. Wood v. Penntex Res. LP*, 322 F. App'x 410 (5th Cir. 2009). Accordingly, the Court concludes that Plaintiff has satisfied her threshold burden of putting the existence of a binding arbitration agreement in issue.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Defendant Crawford & Company's Motion to Compel Arbitration, to Dismiss, and for Sanctions [ECF No. 7]. The FAA, which governs this matter, provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Since the Court finds the making of the Arbitration Agreement to be in issue, the Court sets this case for trial limited to whether there is a binding agreement to arbitrate.

**IT IS ORDERED** that this matter is set for an **in-person** Rule 16 Scheduling Conference on **Tuesday, June 4, 2024, at 4:00 p.m.** The Court expects that Plaintiff and Defendant will be prepared to set deadlines for a concise discovery period in anticipation of an expeditious trial.

**SO ORDERED.**

SIGNED May 30, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**